# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO MAYORAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 08 C 7292 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| WMC MORTGAGE, LLC., | ) | |
| WELLS FARGO BANK, N.A., WELLS | ) | |
| FARGO HOME MORTGAGE, INC, | ) | |
| AMERICA'S SERVICING CO, | ) | |
| ACCREDITED HOME LENDERS, INC., | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| COUNTRYWIDE FINANCIAL CORP., | ) | |
| CITYWIDE MORTGAGE OF AMERICA | ) | |
| CORP.; MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC;  | ) | |
| and DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pedro Mayoral ("Mayoral") filed a five-count amended complaint against a dozen or so defendants.[1] Before the Court are two motions to dismiss the amended complaint. Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. and America's Servicing Company (collectively, "Wells Fargo") move to dismiss Count I. Citywide Mortgage of America, Corp. ("Citywide") moves to dismiss Counts III, IV and V. For the reasons set forth below, the Court denies the motion filed by Wells Fargo. The Court grants in part and denies in part the motion filed by Citywide.

---

[1] It appears that Does 1-5 have never been served. The Court hereby notifies plaintiff that Does 1-5 will be dismissed without prejudice on October 20, 2009 if they are not served by then. See *Fed.R.Civ.P.* 4(m).

## I. Background

For purposes of this motion to dismiss, the Court takes as true the allegations in plaintiff's amended complaint. The Court also considers the documents plaintiff attached to his amended complaint. *See* Fed.R.Civ.P. 10(c).

Plaintiff Mayoral has twice, during the relevant time period, refinanced the mortgage on his home at 1726 N. Monticello in Chicago, Illinois. He has filed a number of claims arising out of the refinanced loans.

The first refinanced mortgage loan (the "December 2005 loan") closed on December 23, 2005, at which time Mayoral borrowed $155,000.00. The initial rate on the December 2005 loan was 8.275% for two years. The December 2005 loan carried an adjustable rate that *could* increase to 11.75% at the first adjustment and could rise to a maximum rate of 14.775% over the life of the loan.

The second loan (the "January 2007 loan") closed on January 25, 2007. With respect to the January 2007 loan, Mayoral borrowed $310,000.00. The proceeds of the loan were dispersed as follows: $156,025.85 to pay off the balance of the December 2005 loan; $134,543.22 in cash to Mayoral; $7,358.00 to Chase Auto; and $12,072.93 in other closing costs. The initial rate on the January 2007 loan was 8.375% for three years. The January 2007 loan carried an adjustable rate that *could* increase to 9.875% at the first change and could rise to a maximum rate of 15.375% over the life of the loan.

## II. Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P.

12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)).

### III. Discussion

#### A. Mayoral's claims against Wells Fargo

In Count I, Mayoral seeks to rescind the December 2005 loan. The Truth in Lending Act ("TILA") allows the obligor in certain transactions to "rescind the transaction until midnight of the third business day following the consummation of the transaction . . ." 15 U.S.C. § 1635(a). That section also requires the creditor to "clearly and conspicuously disclose" to the borrower the borrower's rescission rights. *Id.* According to plaintiff's amended complaint, the December 2005 loan was originated by WMC Mortgage, LLC ("WMC"), which is no longer a party to this

case. Wells Fargo is alleged to be an assignee. Mayoral seeks to rescind the December 2005 loan on the grounds that the rescission notice provided to Mayoral at the December 23, 2005 closing failed to "clearly and conspicuously disclose" plaintiff's right to rescind the transaction within three days, as is required by the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635(a).

Specifically, plaintiff alleges that the Notice of Right to Cancel that he received (and which he attached to his amended complaint) did not list the last date on which he could cancel the transaction. Instead, the form was left blank. In the alternative, plaintiff alleges that after he sought to rescind the loan, WMC provided him a copy of the Notice of Right to Cancel that contained plaintiff's signature and that listed the deadline for rescinding the loan as December 28, 2005. Plaintiff alleges that such notice, had it been given to plaintiff (which plaintiff denies), would still not be clear and conspicuous because, according to plaintiff, the notice should have listed December 27 rather than December 28, 2005 as the deadline.

Wells moves to dismiss Count I. Wells attaches to its motion[2] to dismiss a copy of a Notice of Right to Cancel, which Wells says was signed by plaintiff at the December 23, 2005 closing (and, indeed, appears to contain Mayoral's signature) and which states that the last day to rescind the loan is December 28, 2005. Wells argues that Mayoral cannot state a claim for rescission given that the notice was, as a matter of law, clear and conspicuous.

The parties debate whether the Notice of Right to Cancel signed by Mayoral (the one provided by Wells) would constitute a clear and conspicuous disclosure, because the parties debate whether December 28, 2005–the date listed on the signed copy–was three or four

---

[2]To be precise, the copy was attached to the motion to dismiss that was filed by then-defendant WMC. WMC is no longer a party, and its motion to dismiss was denied as moot. Wells adopted by reference WMC's motion to dismiss.

business days after the date of closing.  Mayoral argues that a notice is necessarily unclear if it lists a rescission deadline of four, rather than three, business days after closing.  The Court takes judicial notice of the fact that in 2005, December 23 fell on a Friday.  December 25, Christmas, was a Sunday.  December 28 was a Wednesday.

The real debate is whether the Monday following Christmas should constitute a business day.  The regulations provide that, for purposes of rescission, the term business day "means all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. 6103(a), such as New Year's Day, the Birthday of Martin Luther King, Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, and Christmas Day."  12 C.F.R. § 226.2(a)(b).  Accordingly, Saturdays are business days, but holidays are not business days for purposes of rescission.  Sometimes, a holiday falls on a Saturday or a Sunday, and, in that event, the legal holiday is usually the preceding Friday or the following Monday.  In 2005, for example, the legal holiday of Christmas was observed on Monday, December 26, 2005.  How does one calculate business days when a holiday falls on a Saturday or a Sunday?  The Federal Reserve Board's official staff interpretation provides some guidance.  It says:

> Four Federal legal holidays are identified in 5 U.S.C. 6103(a) by a specific date: New Year's Day, January 1; Independence Day, July 4; Veterans Day, November 11; and Christmas Day, December 25.  When one of these holidays (July 4, for example) falls on a Saturday, Federal offices and other entities might observe the holiday on the preceding Friday (July 3).  In cases where the more precise rule applies, the observed holiday (in the example, July 3) is a business day.

12 C.F.R. § 226–Supplement I to Part 226–Official Staff Interpretations 2(a)(6)(2).  This makes sense.  Because Saturdays are usually business days for purposes of rescission, the staff interpretation ensures that a borrower does not get to take advantage of the holiday twice (i.e.,

the Saturday holiday plus the day on which the holiday is legally observed). Rather, if the holiday falls on Saturday, Saturday becomes a non-business day because it is a holiday. The staff interpretation says nothing about holidays that fall on Sunday. This, too, makes sense. Because Sundays are not usually business days, there is no danger that the borrower will get to take advantage of the holiday twice. The observed holiday becomes a non-business day. It seems to this Court, then, that the proper calculation of the three-business-day rescission period is as follows: Saturday, December 24, 2005 was a business day because Saturdays are business days; Sunday, December 25, 2005 was not a business day, because Sundays are not business days; Monday, December 26, 2005 was not a business day, because it was the legally-observed holiday of Christmas; Tuesday, December 27, 2005 was a business day; and Wednesday, December 28, 2005 was a business day. So, the Court does not see what would be misleading about stating that the loan could be canceled until midnight on December 28, 2005.

This debate is, however, academic at this point. The Court cannot consider the Notice of Right to Cancel signed by Mayoral that Wells attached to its motion to dismiss without converting the motion to dismiss into a motion for summary judgment. *Fed.R.Civ.P.* 12(d). The Court can consider documents referred to in plaintiff's complaint so long as the documents do not require discovery to authenticate or disambiguate. *See Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002). Here, however, plaintiff specifically alleges that he did not receive the copy of the Notice of Right to Cancel that listed December 28, 2005 as the deadline for rescission. Accordingly, this issue cannot be determined on a 12(b)(6) motion to dismiss.

Defendants' motion to dismiss is therefore denied.

**B.     Plaintiff's state law claims against Citywide.**

Against Citywide, Mayoral asserts three claims: two under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA") and one for breach of fiduciary duty. Citywide served as the mortgage broker for Mayoral's December 2005 and January 2007 loans. The person Mayoral interacted with at Citywide was named Mitchell.

At the closing for Mayoral's December 2005 loan, Mayoral asked Mitchell how much the mortgage broker was going to earn for handling the loan. Mitchell told Mayoral that Mitchell would receive $450.00. Based on Mitchell's statement, Mayoral believed that he was not being overcharged for Citywide's services. Mitchell's cut, however, was not all that Citywide received. Citywide received $4,938.00 in closing costs from the proceeds of Mayoral's December 2005 loan. In addition, WMC paid Citywide a yield spread premium of $1,550.00 in exchange for increasing the amount of interest Mayoral would pay on the loan. Citywide did not tell Mayoral that the yield spread premium would increase the amount of interest he would pay.

About a year later, Mitchell told Mayoral he was "sitting on a goldmine" and, thereby, persuaded Mayoral to refinance again. On the January 2007 loan, the yield spread premium was $2,325.00. Once again, Citywide failed to tell Mayoral that Citywide would receive a yield spread premium or that the effect of the yield spread premium was that Mayoral would pay a higher interest rate on the loan.

In Count III, Mayoral asserts that Citywide violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by failing to disclose the yield spread premiums with respect to the December 2005 and January 2007 mortgage loans. Mayoral asserts that Citywide intended for Mayoral to rely on the deception.

In order to state a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act based on the payment of a yield spread premium ("YSP"), a plaintiff must allege: "(1) the existence of an agreement between the lender and broker whereby the broker promises to refer settlement service business to the lender; (2) the transfer of a thing of value between the lender and broker based upon that agreement; (3) the referral of settlement service business by the broker to the lender, and either that (4) the broker received a YSP without providing any goods or services of the kind typically associated with a mortgage transaction or (5) if the broker did provide such goods or services, the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided." *Johnson v. Matrix Financial Serv. Corp.*, 820 N.E.2d 1094, 354 Ill.App.3d 684, 695 (Ill. App. Ct. First Dist. 2004) (internal citations omitted).

Here, Mayoral fails to allege either that Citywide provided no goods or services to WMC or that the goods and services were not reasonably related to the compensation Citywide received. Accordingly, Mayoral has failed to state a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act in Count III. The Court dismisses without prejudice Count III as to Citywide.

In Count IV, Mayoral asserts that Citywide violated the Illinois Consumer Fraud and Deceptive Trade Practices Act by discriminating against Mayoral on the basis of his race. Mayoral asserts that, on average, Citywide received higher yield spread premiums on loans arranged for minority borrowers, such as Mayoral, than on loans arranged for white borrowers. Mayoral insists that he is not asserting a claim for violation of the Fair Housing Act or the Equal Credit Opportunity Act.

The ICFA is "intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416-417 (Ill.S.Ct. 2002). The elements of a claim are: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson*, 201 Ill.2d at 418. In determining whether a practice is unfair, Illinois courts consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson*, 201 Ill.2d at 417-418.

Mayoral does not point out, and the Court has not found, a single Illinois case in which a court has allowed a race discrimination claim to proceed under the Illinois Consumer Fraud and Deceptive Trade Practices Act. The Court is aware that a federal court has extended the Illinois Consumer Fraud and Deceptive Trade Practices Act to race discrimination. *Pena v. Freedom Mortgage Team, Inc.*, Case No. 07 C 552, 2007 WL 3223394 (N.D. Ill. Oct. 24, 2007). There, the plaintiff had alleged that minority borrowers were given unnecessarily high interest rates. The *Pena* court concluded that such a practice "was unfair within the meaning of *Robinson*." *Pena*, 2007 WL 3223394 at *5. This Court respectfully disagrees. In *Robinson*, the Illinois Supreme Court considered whether certain automobile lease terms–including early termination penalties, mileage fees and reconditioning fees–were unfair or deceptive. Race discrimination was not an issue in the case, and nothing the Illinois Supreme Court said in *Robinson* makes this Court think the Illinois Supreme Court would extend the Illinois Consumer Fraud and Deceptive Trade Practices Act to race discrimination. This Court is not inclined to extend the Illinois

Consumer Fraud and Deceptive Trade Practices Act beyond that which Illinois courts have extended it. The Court is not condoning race discrimination, and if plaintiff can state a claim under any of the state and/or federal statutes that prohibit race discrimination, he is granted leave to include such claims in an amended complaint. Count IV is dismissed without prejudice.

In Count V, Mayoral asserts that Citywide breached its fiduciary duty to Mayoral by failing to disclose the purpose and effect of the yield spread premium, failing to obtain the best loan terms for plaintiff, overcharging him and engaging in other conduct adverse to Mayoral's interests.

To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege the existence of a fiduciary duty, a breach of the duty and that the breach proximately caused plaintiff's injury. *Johnson v. Matrix Fin. Serv. Corp.*, 354 Ill.App.3d at 698. As defendant points out, in *Johnson*, the court concluded that a plaintiff could not make out a claim for breach of fiduciary duty premised on a violation of the Real Estate Settlement Procedures Act ("RESPA") without first stating a claim under RESPA. *Id.* at 698. Mayoral, however, alleges other potential fiduciary breaches and alleges that Citywide owed him a fiduciary duty. Accordingly, Mayoral has stated a claim in Count V. The Court denies Citywide's motion as to Count V.

**IV.    Conclusion**

For the reasons set out above, the Court denies the motion to dismiss filed by defendants Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc. and America's Servicing Company. The Court grants in part and denies in part Citywide's motion to dismiss. The Court dismisses without prejudice Counts III and IV as to defendant Citywide.

This case is set for status on October 20 at 11:00 a.m.

ENTER:

George M. Marovich
United States District Judge

DATED: October 6, 2009